## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGIE'S LIST, INC., | |
| Plaintiff, | |
| v. | |
| AMAZONLOCAL LLC, MICHAEL ALBO, KRISTIN BAKER, DAN BEARY, COLTON BOZIGIAN, JAKE CONNERTON, ADAM DIVINCENZO, BRANDON GOODWYN, KRISTEN HAUGHT, JUSTIN HILLMAN, AMIT JAIN, JOSHUA KEEZER, OLIVIA LANDERGAN, DANIEL MALAMUD, RAISSA MASKET, SAMANTHA MCDONALD, JASON PATRAO, SHARON PORTER, DARREN REINSTEIN, BILLY RESTREPO, MICHAEL SHMUNIS, and JACQUELYN VAIL, | Case No. 1:15-cv-968 |
| Defendants. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Angie's List, Inc. ("Angie's List"), by counsel, for its Verified Complaint for Injunctive and Other Relief, against Defendants, alleges and states as follows:

### INTRODUCTION

1.      Angie's List is an internet-based business that, over the last twenty years, has pioneered a product that allows its members to identify, research, and review service providers (such as home contractors and other professionals).  Over those twenty years, Angie's List has compiled, maintained, and protected a database of proprietary information that is made available only to members.

2.      Those members, moreover, must (and do) consent to a Membership Agreement that expressly prohibits the use of Angie's List's accounts or information for anything other than

personal purchasing purposes.  The Agreement explicitly prohibits the use of Angie's List's accounts and information for commercial purposes.

3.     Defendant AmazonLocal LLC ("Amazon Local") has described itself as a "local deals website that offers up to 75% savings on local services, products, and experiences."  Since June 2014, Amazon Local has pushed into the home services procurement market, offering deals from allegedly "handpicked pros" providing local services such as plumbing and electrical work. Amazon Local directly competes with Angie's List.

4.     To be clear, Angie's List welcomes the competition, but it expects that its competitors will comply with the law.  Defendants, as set forth herein, have not done so.

5.     Amazon Local has chosen not to devote the necessary time, resources, and effort to compete legitimately with Angie's List and to develop its own research to identify and solicit service providers to work with.  Instead, Amazon Local and its employees have chosen the shortcut of surreptitiously accessing and misappropriating Angie's List's proprietary information (including highly valuable information about thousands of service providers) through dozens (if not more) of Angie's List membership accounts that were fraudulently obtained and misused. Amazon Local has, in turn, used that information to identify credible and reputable service providers with whom it would like to do business and, in some instances, has further used Angie's List membership accounts to directly communicate with and solicit those providers to do business on Amazon Local.

6.     Angie's List, therefore, seeks relief through this Court.

## THE PARTIES

7.     Angie's List is a Delaware corporation with a principal place of business located in Indianapolis, Indiana.

8.     Angie's List was created in 1995 to provide its members with detailed feedback on service providers (*e.g.*, plumbers, electricians, painters, etc.) from other members as a means to provide up-to-date, reliable, unbiased ratings and reviews on local services.

9.     Angie's List operates a website that provides a forum on which its members and verified non-members may leave reviews about their first-hand experiences with service companies in members' geographic areas.

10.    Angie's List has spent years obtaining, compiling, aggregating, and developing a database of information about service providers including, in particular, customer reviews that indicate consumers' opinions and preferences regarding these services providers, throughout the United States.

11.    Angie's List also has spent several years identifying highly rated service providers who are willing to provide significant discounts to individual consumers through eCommerce offerings available through Angie's List's website.  Angie's List has further worked with those service providers to develop the parameters of such transactions that can be purchased directly through its Big Deal website or its mobile app.

12.    Defendant Amazon Local is a Delaware limited liability corporation with its principal place of business located in Seattle, Washington.  Upon information and belief, Amazon Local is a wholly owned subsidiary of Amazon.com, Inc. ("Amazon").

13.    As explained more fully below, Amazon Local purports to offer its customers a similar type of service as the services that Angie's List provides.

14.    Upon information and belief, Defendant Michael Albo was employed by or performed work for Amazon Local, holding the title of Assistant Sales Manager.

15.    Upon information and belief, Defendant Kristin Baker is employed by or performed work for Amazon Local, holding the title of Product Launch Specialist.

16.     Upon information and belief, Defendant Dan Beary was employed by or performed work for Amazon Local, holding the title of Regional Marketing Consultant.

17.     Upon information and belief, Defendant Colton Bozigian is employed by or performs work for Amazon Local, having held the title of Regional Sales and Marketing Consultant.

18.     Upon information and belief, Defendant Jake Connerton is employed by or performs work for Amazon Local, holding the title of Regional Marketing Consultant.

19.     Upon information and belief, Defendant Adam DiVincenzo was employed by or performed work for Amazon Local, holding the title of Regional Marketing Consultant.

20.     Upon information and belief, Defendant Brandon Goodwyn is employed by or performs work for Amazon Local, holding the title of Account Executive.

21.     Upon information and belief, Defendant Kristen Haught is employed by or performs work for Amazon and/or Amazon Local, holding the title of Account Executive.

22.     Upon information and belief, Defendant Justin Hillman was employed by or performed work for Amazon Local, holding the title of Account Executive.

23.     Upon information and belief, Defendant Amit Jain is employed by or performs work for Amazon Local, holding the title of Software Development Manager.

24.     Upon information and belief, Defendant Joshua Keezer is employed by or performs work for Amazon Local, having held the title of Account Executive.

25.     Upon information and belief, Defendant Olivia Landergan is employed by or performs work for Amazon Local, having held the title of Regional Marketing Consultant.

26.     Upon information and belief, Defendant Daniel Malamud was employed by or performed work for Amazon Local, having held the title of Account Executive.

27.     Upon information and belief, Defendant Raissa Masket was employed by or performed work for Amazon Local, holding the title of Local Marketing Consultant.

28.     Upon information and belief, Defendant Samantha McDonald is employed by or performs work for Amazon Local, holding the title of Regional Marketing Consultant.

29.     Upon information and belief, Defendant Jason Patrao is employed by or performs work for Amazon and/or Amazon Local, holding the title of Director, Checkout Experience.

30.     Upon information and belief, Defendant Darren Reinstein is employed by or performs work for Amazon Local, holding the title of Sales Manager.

31.     Upon information and belief, Defendant Billy Restrepo is employed by or performs work for Amazon and/or Amazon Local, holding the title of Sales Account Executive.

32.     Upon information and belief, Defendant Michael Shmunis is employed by or performs work for Amazon Local, holding the title of Senior Local Marketing Consultant.

33.     Upon information and belief, Defendant Jacquelyn Vail was employed by or performed work for Amazon Local, holding the title of Team Lead/Senior Sales Consultant.

34.     The above-named individual defendants are collectively referred to hereinafter as the "Amazon Local Employees"[1] and have participated in the events set forth herein on behalf of themselves and/or on behalf of Amazon Local.

35.     Upon information and belief, Defendant Sharon Porter was employed by or performed work for Amazon Local, holding the title of Sales Account Executive.

### JURISDICTION AND VENUE

36.     This Court has original subject matter jurisdiction over the claims in this Complaint under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored

---

[1] This definition excludes Sharon Porter, who did not have an Angie's List membership but is included in select causes of action below.

Communications Act, 18 U.S.C. §§ 2701–2712, as these claims arise under the laws of the United States.

37.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a), because the state law claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

38.     The Court has jurisdiction over Amazon Local, the Amazon Local Employees, and Sharon Porter pursuant to Federal Rule of Civil Procedure 4(k)(1)(a) and Indiana Trial Rule 4.4(A).

39.     Amazon Local, the Amazon Local Employees, and Sharon Porter purposefully directed their activities toward residents of Indiana and otherwise purposefully availed itself of the privileges of conducting activities within Indiana, thus invoking the benefits and protections of its laws.  Moreover, Amazon Local specifically markets to Indiana, through its "Indianapolis Deals" at http://local.amazon.com/indianapolis (last visited on June 19, 2015) and Amazon Local's website is accessible to Indiana residents.

40.     A substantial part of the events or omissions giving rise to Angie's List claims occurred within this judicial district with respect to this civil action.

41.     The contacts of Amazon Local, the Amazon Local Employees, and Sharon Porter within the State of Indiana confer jurisdiction in this Court.

42.     For example, the Amazon Local Employees consented to jurisdiction through the Angie's List Membership Agreement ("Membership Agreement").

43.     A true and accurate copy of the Membership Agreement is attached as Exhibit A.

44.     As set forth therein, each of the Individual Defendants further have explicitly consented to the jurisdiction of this Court.  Ex. A, Membership Agreement ¶ 30 ("You agree and consent to the exclusive jurisdiction of the state or federal courts located in Marion County, Indiana and waive any defense of lack of personal jurisdiction or improper venue or forum non conveniens to a claim brought in such court . . . .")

45.     Amazon Local, the Amazon Local Employees, and Sharon Porter have engaged in tortious conduct which has harmed Angie's List, including harm that has occurred in Indiana.

46.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

47.     For venue purposes, Amazon Local resides in this judicial district.  At the time this action is being commenced, Amazon Local, the Amazon Local Employees, and Sharon Porter are subject to personal jurisdiction in Indiana and in this judicial district.

## BACKGROUND FACTS

**A.      Angie's List has spent twenty years and hundreds of millions of dollars developing and protecting an unparalleled resource for consumers searching for the best local service providers.**

48.     Angie's List has compiled information regarding service providers and has shared that information with its members since 1995.

49.     Over those twenty years, Angie's List has invested hundreds of millions of dollars into (a) collecting millions of reviews of service providers around the country, (b) protecting the integrity of its data by, for example, placing safeguards against reviews being posted by employees, family members, or competitors of service providers, and (c) compiling such reviews and information (including service provider grades) in a user-friendly format that its over three million members value and benefit from.

50.     Angie's List has further leveraged that immense database of information (which has taken twenty years to develop) to also offer Big Deals and other eCommerce transactions so

that customers can not only research who the top-rated service providers are but also place orders with them (often at a substantial savings to the customer) through the Angie's List website.

**B.      Amazon Local, which is now competing with Angie's List, must rise to the challenge of developing its own customer resource.**

51.      Amazon Local recently began competing with Angie's List by, among other things, offering potential customers the ability to place orders with service providers through Amazon Local's website.

52.      Analysts promptly questioned whether and how Amazon Local could quickly identify, find, and engage highly rated service providers across the country, as Angie's List had done through its voluminous and now twenty-year-old database.

53.      As the Wall Street Journal observed about Amazon Local in November 2014, "But the listing services will face hurdles.  It can take years to build a stable of service providers." Ex. B, Amazon Offers Help Finding Local Handymen, published by The Wall Street Journal on November 24, 2014.

54.      Amazon Local's business, moreover, requires more than simply identifying thousands of (if not more) service providers across the country who want to work with Amazon Local.  Amazon Local's success is dependent on identifying service providers that have a significant demonstrated level of credibility and reliability.

55.      As Wharton School of Business Professor Daniel Raff has stated: "It would be catastrophic for [Amazon Local] in any particular geography if they hire people who are incompetent or worse; surely, it would get a lot of local press play" … "That would just be a disaster.  They would want to take pains to avoid that."  Ex. C, Amazon's New Local Services: Ratcheting Up the Competition, published by Knowledge at Wharton on December 3, 2014.

Professor Raff further "agreed that the vetting process would be crucial for the service providers that advertise on Amazon." *Id.*

56.     Indeed, Amazon Local itself has promoted its belief that the service providers included on its site are reliable.  *See* Ex. D, Amazon Quietly Reveals Local Services Push With New Web Page, published by Forbes on November 25, 2014 ("We've handpicked some of the best pros in your neighborhood and require them all to be licensed, insured and background-checked.").

57.     The challenges facing Amazon Local in its new business were neatly summarized in a Forbes article published in June 2014 as follows:

> Angie Hicks, cofounder and chief marketing officer of Angie's List, believes that her company's 19 years of experience in compiling information on local services in one central place gives it a distinct advantage.  "We've been here for so long that we've seen people come and go," she says. "There's lots of flavors. It's such a large market and people are still gaining marketshare, but the differentiator is expertise and knowledge."  Expertise may also keep Amazon from mastering the market, says [Marco] Zappacosta [cofounder and CEO of Thumbtack], who says that selling a professionals' services are much different than peddling commodities like shoes or electronics. "You can't go after a few distributors and get all the titles," he says, making the comparison to books. "There's no [one] wholesaler tha[t] you can hook into that gives you access to the market. You have to go professional to professional to find them."

Ex. E, Amazon Chases Local Services, The New E-Commerce Battleground, published by Forbes on June 10, 2014.

## C.     Amazon Local's employees have stolen—and assisted each other in stealing—Angie's List's proprietary information in the course of their work duties with Amazon Local.

58.     In lieu of going "professional to professional to find [reputable service providers]," Amazon Local has instead chosen to steal critical information from Angie's List.

59.     Angie's List has discovered that dozens (and potentially more) of Amazon Local employees (many of whom are in Sales or Marketing for Amazon Local) have obtained Angie's

List memberships, thereby subjecting themselves to Angie's List's terms and conditions which expressly prohibit the use of Angie's List's website for commercial (or other non-personal purchasing) purposes.

60.    As explained in detail below, most of their individual search behavior demonstrates that Amazon Local and its sales team have improperly and unlawfully used Angie's List to identify and engage top-rated service providers.[2]

61.    Specifically, Amazon Local and its sales team have joined Angie's List under false, fraudulent, and deceptive pretenses that their use of the website would be for personal purchasing purposes only, as expressly set forth in the Angie's List Membership Agreement.

62.    In joining Angie's List, they specifically agreed that they would not use Angie's List's website or information for commercial purposes.

63.    Nonetheless, Amazon Local and its sales team have run thousands of searches on Angie's List to identify top-rated service providers in various categories in various geographical markets.

64.    Their search behavior alone demonstrates that they are using Angie's List for non-personal purchasing (i.e., commercial) purposes.  Many of the Amazon Local Employees, for example, have searched for service providers in cities located hundreds and thousands of miles away from their own homes.  Many of them also have run hundreds of searches across a vast array of un-related service categories in a very short period of time.  The specific details for each Amazon Local Employee are set forth below.

65.    Angie's List also has already identified examples where Amazon Local is making available to its customers the same or substantially same offerings that appear on Angie's List

---

[2]    There may also be dozens more not-yet-identified Amazon Local employees involved in what appears to be a coordinated attack.

for services provided by the *very same companies* that Amazon Local researched on Angie's List.

66.     For example, the Amazon Local Employees searched for the following service providers on Angie's List which, upon information and belief, subsequently had offerings on Amazon Local: Ageless Chimney Inc, MyClean, Eco Safe Maids LLC, Central Sight and Sound, Complete Home Services, Green Pest Solutions, Lehigh Valley Electric Inc, Murphy Valley Electric Inc, and Family Prestige Garage Doors.

67.     Moreover, some of the Amazon Local Employees have logged onto Angie's List's website with their membership accounts and used Angie's List's website to directly communicate with and solicit service providers to do business with Amazon Local.

68.     For example (and as set forth in detail below), one Amazon Local Employee directly solicited a service provider (in New York) for Amazon Local on Angie's List's own website using her Angie's List membership account.

69.     That same employee further shared her account credentials with another Amazon Local employee who used that account to solicit yet another service provider (in Connecticut) for Amazon Local using the exact same solicitation language that yet another Amazon Local Employee used to solicit yet another service provider (in Maryland) that same week using his own Angie's List membership account (which had actually been created using a fictitious name).

70.     This is direct evidence that the Defendants' conduct was not coincidental, but rather an intentional and coordinated plan to misappropriate data from Angie's List on Amazon Local's behalf.

71.     The Angie's List Membership Agreement expressly prohibits "access[ing] any Content for any commercial, educational or other purposes not related to [the member's] personal purchasing decision." Ex. A, Membership Agreement ¶ 16(q).

72.     Upon information and belief, each of the Amazon Local Employees are Angie's List members and have repeatedly accessed Angie's List content for commercial purposes and/or other purposes unrelated to personal purchasing decisions.

73.     For example, upon information and belief, the Amazon Local Employees have engaged in the following behavior which is inconsistent with Angie's List members who use the website for their own individual purchasing decisions and fully consistent with the behavior of someone who is attempting to improperly search for Angie's List's top rated service providers to utilize that information for businesses competing with Angie's List.

**D.      The Amazon Local Defendants have each breached the Angie's List Membership Agreement and stolen Angie's List proprietary information to find the best service providers for Amazon Local.[3]**

Michael Albo

74.     Defendant Michael Albo, who held the title of "Account Executive" at Amazon Local, signed up for an Angie's List membership in May 2013 using a fictitious name.

75.     In late 2014, he then used his membership account and Angie's List's website to directly contact service providers and to solicit those service providers to do business with Amazon Local, stating "I wasn't sure how else to get in touch with you, but your company has a phenomenal reputation in the Maryland area and my company would like to do a feature on you. Please give me a call to discuss."

Kristin Baker

76.     Defendant Kristin Baker, has held the title of "Product Launch Specialist" and "Account Executive" at Amazon Local in which, according to her LinkedIn Profile, she was

---

[3]      The details of each individual defendant's work on behalf of Amazon Local and their use of Angie's List is based upon Angie's List's good faith knowledge, information, and belief as of the date of this filing. Additional Amazon Local employees may yet still be identified, and additional details about each individual's use may further support the legal claims set forth below.

responsible for "prospecting, penetrating and securing strategic business relationships in a launch region."

77.     In September 2013, she signed up for an Angie's List membership.  Despite apparently living in Seattle, Washington, she obtained access to Angie's List's Albuquerque, New Mexico market and began to review information for dozens of service providers in a wide range of categories.

78.     For example, within a three-month period, she searched for service providers in the categories of heating and air conditioning, glass and mirrors, upholstery cleaning, flooring, tree service, handymen, hauling, carpet cleaning, pest control, electrical work, exterior painting, interior painting, and garage doors.

79.     This type of search behavior within this timeframe indicates that Ms. Baker has used her Angie's List membership for commercial, not personal purchasing, purposes.

80.     Further, Defendant Kristin Baker used her membership account and Angie's List's website to directly contact service providers and to solicit those service providers to do business with Amazon Local, stating "I am reaching out to see if you would be interested in doing a similar offer on Amazon as you are doing on Angie's List."

Dan Beary

81.     Defendant Dan Beary, held the title of "Regional Marketing Consultant" at Amazon Local, where, according to his LinkedIn profile, he prospected "new clients to work with Amazon Local."

82.     Moreover, upon information and belief, Defendant Dan Beary used a false address in Portland for his Angie's List account.

83.     Although apparently residing in Seattle, Washington, in May 2013, he signed up for an Angie's List membership and gained access to Angie's List's Portland, Oregon market,

where he almost immediately began reviewing information for dozens of service providers in a wide range of categories.

84. For example, on his first day of membership, Defendant Dan Beary searched for service providers in the categories of heating and air conditioning, moving, gutter cleaning, pest control, interior painting, exterior painting, housecleaning, landscaping, skin and body care (day spa services), dentistry, window tinting, roofing, hardwood flooring, drywall, manicures, and lawn irrigation.

85. This type of search behavior within this timeframe indicates that Mr. Beary has used his Angie's List membership for commercial, not personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Colton Bozigian

86. Defendant Colton Bozigian held the title of "Regional Sales and Marketing Consultant" at Amazon Local, where, according to his LinkedIn profile, he "identified pitch[ed] and closed businesses to feature on Amazon Local platform."

87. After joining Amazon Local in April 2013, he signed up for an Angie's List membership the next month.

88. Using his Angie's List membership, he reviewed information for dozens of service providers in a wide range of categories.

89. For example, in just a two-day period, Defendant Colton Bozigian searched for service providers in categories such as alarms, gutter repair and replacement, roofing, landscaping, dentistry, pest control, tree service, housecleaning, gutter cleaning, heating and air conditioning, pediatrics, cosmetic dentistry, moving, interior painting, and window cleaning.

90.     This type of search behavior within this timeframe indicates that Mr. Bozigian has used his Angie's List membership for commercial, not personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Jake Connerton

91.     Defendant Jake Connerton, who holds himself out as "Regional Marketing Consultant," at Amazon, signed up for an Angie's List membership in October 2013 – just months after joining Amazon.

92.     According to his LinkedIn profile, his responsibilities include "identifying new business prospects that are a good fit for Amazon Local" and launching "new regions for Amazon Local."

93.     Although apparently residing in Plano, Texas, he gained access to Angie's List's Miami/Ft. Lauderdale, Florida market, where he reviewed information for service providers in a wide range of categories.

94.     For example, on just one day, Defendant Jake Connerton searched for the following service providers: locksmiths, electrical, rehabilitation – physical therapy, heating and air conditioning, computer repair and services, auto service, handymen, roofing, carpet cleaning, and housecleaning.

95.     This type of search behavior within this timeframe indicates that Mr. Connerton has used his Angie's List membership for commercial, not personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Adam DiVincenzo

96.     Defendant Adam DiVincenzo held the title of "Regional Marketing Consultant" at Amazon Local.

97.     He signed up for an Angie's List membership in June 2013 – just months after joining the employ of Amazon Local.  The email address he used to create his Angie's List account was dailydealprospecting@gmail.com.  His LinkedIn account further explains that his "responsibilities include prospecting and cold calling quality local businesses" on behalf of "Amazon.com's local platform Amazon Local."

98.     Throughout the course of his Angie's List membership, Defendant Adam DiVincenzo performed over 100 searches and viewed the profiles of several hundred service providers, including providers in the following categories: garage doors, heading and air conditioning, detailing, florists, windows, window cleaning, handymen, bodywork, housecleaning, carpet cleaning, window tinting, moving, roofing, locksmiths, lawn fertilization and treatment, auto detailing, plumbing, tree service, siding, gutter cleaning, pressure washing, and others.

99.     This type of search behavior within this timeframe indicates that Mr. DiVincenzo has used his Angie's List membership for commercial, not personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Brandon Goodwyn

100.    Defendant Brandon Goodwyn, who holds the title of "Account Executive," at Amazon Local, signed up for an Angie's List membership in July 2014 – just a couple months after joining Amazon Local.

101.    According to his LinkedIn Profile, he is a member of the New York Division of Amazon Local, where he is "involved in the sales and development of the Amazon Local platform."

102.    Although apparently working in New York City, he gained access to Angie's List's Baltimore market, where he reviewed information for over one hundred service providers in a wide range of categories.

103.    For example, in one month, Mr. Goodwyn searched for multiple service providers in the following categories: carpet cleaning, moving, garage door services, kitchen and bathroom remodeling, interior painting, framing, auto service, chimney sweep, gutter cleaning, house cleaning, tree service, electrical, handymen, roofing, landscaping, and insulation.

104.    His search behavior and usage indicates that he used his Angie's List membership for commercial, rather than personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Kristen Haught

105.    Defendant Kristen Haught, who holds herself out as "Account Executive" or "Regional Marketing Consultant" at Amazon, signed up for an Angie's List membership in July 2014.

106.    Although apparently residing in New York City, she gained access to Angie's List's Atlanta, Georgia market, where she used her membership account and Angie's List's website to directly contact service providers and to solicit those service providers to do business with Amazon Local.

107.    In one instance, she stated that "I'm reaching out on behalf of Amazon shoppers in Atlanta who are looking for electrical services.  Came across your site on Angie's List and I think our customers would be really interested in your services."

108.    Moreover, within the months in which she was soliciting service providers to do business with Amazon Local, she reviewed information for dozens of service providers in a wide range of categories including the following: tree service, chimney sweep, housecleaning, gutter

17

cleaning, auto detailing, home automation, window cleaning, energy efficient auditing, electrical, plumbing, roofing, and landscaping.

109.    Her search behavior and usage indicates that she used her Angie's List membership for commercial, rather than personal purchasing, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Justin Hillman

110.    Defendant Justin Hillman was employed by or performed work for Amazon Local as an "Account Executive," from January 2013 to October 2014.

111.    Just months after taking a position with Amazon Local, Defendant Justin Hillman signed up for an Angie's List membership in April 2013 using the email address "justinamazon44@gmail.com."

112.    According to his LinkedIn Profile, he was responsible for launching and growing Amazon Local's Boston-South region.

113.    Thus, although apparently residing in an apartment in Bellevue, Washington, he gained access to Angie's List's Boston market, where he reviewed information for several service providers in a wide range of categories, including the following: plumbing, kitchen and bathroom remodeling, landscaping, gutter cleaning, carpet cleaning, hauling, chimney sweep, exterior painting, heating and air conditioning, air duct cleaning, pressure washing, housecleaning, pest control/extermination, tree service, computer repair and services, interior painting, dryer vent cleaning, auto glass, window tinting, and garage doors.

114.    Mr. Hillman used his membership to perform over 200 searches on Angie's List and to access the profiles of nearly 200 service providers.

115.    This search behavior and usage indicates that he used his Angie's List membership for commercial, rather than personal, purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Amit Jain

116.    Defendant Amit Jain, who is employed by or performs work for Amazon and/or Amazon Local as a "Software Development Manager," signed up for an Angie's List membership in July 2013.

117.    This membership was created around the same time as when other Amazon Local employees began to improperly obtain information from Angie's List for commercial purposes.

118.    Throughout the course of his Angie's List membership, Defendant Amit Jain performed numerous searches and viewed profiles of a wide range of service providers, including performing over 300 searches.

119.    His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Joshua Keezer

120.    Defendant Joshua Keezer, who held the title of "Account Executive" at Amazon Local, signed up for an Angie's List membership in May 2013.

121.    According to his LinkedIn profile, he was "[c]harged with accountability for increasing selection by acquiring new merchants and developing concepts to feature on Amazon Local's platform."

122.    In just a one-week period, he used his Angie's List membership to review information for dozens of service providers in a wide range of categories (e.g. windows, foot and

ankle care, tree service, lawn and yard work, landscaping, detailing classic cars, and auto radio service).

123.   His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Olivia Landergan

124.   Defendant Olivia Landergan, who held the title of "Regional Marketing Consultant" at Amazon Local, signed up for an Angie's List membership in March 2013.

125.   Within a few months, she reviewed information for over two hundred service providers in a wide range of categories.

126.   For example, within a one-week period, Defendant Olivia Landergan searched for multiple service providers in the following categories: pressure washing, heating and air conditioning, air duct cleaning, housecleaning, garage doors, chimney sweep, moving, window cleaning, dryer vent cleaning, interior painting, chimney repair, carpet cleaning, pest control, electrical, upholstery cleaning, and limousine service.

127.   Her search behavior and usage indicates that she used her Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Daniel Malamud

128.   Defendant Daniel Malamud, who held the title of "Account Executive" at Amazon Local, signed up for an Angie's List membership in March 2013 – just months after joining Amazon Local.

129.   Although apparently residing in an apartment in New York City, he gained access to Angie's List's Philadelphia market using the email address "amazonsouthjersey@gmail.com."

130.     Within a few months, he reviewed information for hundreds of service providers in a wide range variety of categories.

131.     For example, in the first three months of his Angie's List membership, Defendant Daniel Malamud searched for the numerous service providers in the following categories: auto detailing, garage doors, electrical, air duct cleaning, gutter cleaning, housecleaning, pressure washing, electrical – auto, roofing, interior painting, window cleaning, carpet cleaning, lawn fertilization and treatment, window tinting, chimney sweep, and pest control/extermination.

132.     His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Raissa Masket

133.     Defendant Raissa Masket, held the title of "Local Marketing Consultant" at Amazon Local.

134.     Within months of beginning her employment with Amazon Local, she signed up for an Angie's List membership in August 2013.

135.     Although apparently residing in California, she gained access to Angie's List's Denver, Colorado market, where she reviewed information for service providers in a wide range of categories.

136.     For example, in the first two months of her Angie's List membership, Defendant Raissa Masket searched for the numerous service providers in the following categories: carpet cleaning, resume services, window cleaning, heating and air conditioning, tree service, auto service, lawn and yard work, garage doors, foot and ankle care, eye care, orthopedics, dentistry, classic car service, massage therapy, manicures, and video duplication and transfer.

137.    Her search behavior and usage indicates that she used her Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Samantha McDonald

138.    Defendant Samantha McDonald, who holds the title of "Regional Marketing Consultant" at Amazon Local, signed up for an Angie's List membership in October 2013 – just one month after joining Amazon Local.

139.    Upon joining Angie's List, she then used her membership account and Angie's List's website to directly contact service providers and to solicit those service providers to do business with Amazon Local.

140.    She specifically stated: "I'm reaching out to you because I work for Amazon.com and run our site in the Syracuse area that features local businesses to our Amazon.com shoppers in your area. We are looking to feature a chimney sweeping offer to our customers and I came across your business on Angie's List and see you have great reviews."

141.    Moreover, she shared her Angie's List account credentials with another Amazon Local employee (Sharon Porter), who used that account and Angie's List's own website to solicit another service provider in another state -- using similar solicitation language as Defendant Michael Albo used that same week to solicit yet another service provider using his Angie's List account in yet another state, stating: "I wasn't sure how else to get in touch with you, but your company has a phenomenal reputation in the CT area, I also am from Stamford and my company would like to do a feature on you.  Please give me a call to discuss."

142.    Within the first month of her Angie's List membership, she also reviewed information for dozens of service providers in a wide range of categories, including, but not

limited to, the following: carpet cleaning, housecleaning, garage doors, tree service, moving, plumbing, gutter cleaning, pressure washing, chimney repair, landscaping, and pest control.

143.   Her search behavior and usage indicates that she used her Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Jason Patrao

144.   Defendant Jason Patrao is employed by or performs work for Amazon and/or Amazon Local, holding the title of "Director, Checkout Experience at Amazon."

145.   Mr. Patrao signed up for five different memberships with Angie's List, creating memberships on May 22, 2012, May 29, 2012, December 10, 2013, April 24, 2015, and May 5, 2015.

146.   Despite apparently residing in or around Seattle, Washington and having his primary Angie's List market in Seattle, in July 2014, he gained access to Angie's List's New York City (Tri-State Area) market, where he reviewed information for numerous service providers in a wide range of categories.

147.   Over a two-year period, Mr. Patrao viewed the profiles of over 600 service providers on Angie's List.

148.   In just the past year, Defendant Jason Patrao searched for and viewed the information for service providers in the following categories: kitchen and bathroom remodeling, handymen, general remodeling, carpet sales/installation/repair, locksmiths, heating and air conditioning, drivers education, fencing, tree service, alarms, excavating, interior painting, moving, appliance sales, medical care, large appliance repair, chimney sweep, radon detection and reduction, home inspection, structural engineering, roofing, electrical, plumbing, lead testing and removal, bathtub refurbishing and liners, architects and building design, basement

remodeling, general remodeling, concrete pouring and repair, gas leak repair, windows, glass and mirrors, ceramic tile, and sunrooms and patio enclosure remodeling.

149. His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

150. Mr. Patrao, moreover, created his most recent membership account even after Angie's List terminated his prior accounts due to the behavior described above.

Sharon Porter

151. Defendant Sharon Porter is employed by or performs work for Amazon and/or Amazon Local, holding the title of "Sales Account Executive."

152. Although she is not an Angie's List member, she has used another Amazon Local employee's Angie's List account information to access Angie's List's messaging system to solicit an Angie's List service provider for commercial purposes of Amazon Local.

153. Specifically, on October 2, 2014, Defendant Sharon Porter used the Angie's List account of Defendant Samantha McDonald to message a service provider, stating: "I wasn't sure how else to get in touch with you, but your company has a phenomenal reputation in the CT area, I also am from Stamford and my company would like to do a feature on you. Please give me a call to discuss."

154. She used Angie's List's messaging service without authorization and her usage indicates that she misappropriated Angie's List's data on behalf of Amazon Local.

Darren Reinstein

155. Defendant Darren Reinstein, who is employed by or performs work for Amazon Local as an "Sales Manager," signed up for an Angie's List membership in July 2013.

156.    This membership was created around the same time as when other Amazon Local employees began to improperly obtain information from Angie's List for commercial purposes.

157.    According to his LinkedIn Profile, he manages a team of 11 Account Executives at Amazon Local, where his responsibilities include "growing AmazonLocal's market share."

158.    Throughout the course of his Angie's List membership, Defendant Darren Reinstein performed numerous searches and viewed profiles of a wide range of service providers.

159.    His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Billy Restrepo

160.    Defendant Billy Restrepo, who holds himself out as "Sales Account Executive" at Amazon, signed up for an Angie's List membership in May 2013.

161.    Within months of becoming an Angie's List member, he reviewed information for dozens of service providers in a wide range of categories.

162.    For example, between May and June 2013, Defendant Billy Restrepo searched for service providers in the following categories: flooring, kitchen and bathroom remodeling, driveways, pressure washing, dentistry, window cleaning, heating and air conditioning, hair removal, interior painting, carpet cleaning, gutter cleaning, and oriental rug cleaning.

163.    He has further proceeded to run approximately 175 searches on Angie's List and viewed the profiles of approximately 130 service providers.

164.    His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Michael Shmunis

165.    Defendant Michael Shmunis, holds the title of "Senior Local Marketing Consultant" at Amazon Local.

166.    In July 2013, he signed up for an Angie's List membership in New York City.

167.    He then proceeded to gain access to several Angie's List markets including Washington D.C.; Pittsburgh, Pennsylvania; Allentown, Pennsylvania; and New Hampshire.

168.    Over the course of his Angie's List membership, he has reviewed information for dozens of service providers in a wide range of categories including, but not limited to, housecleaning, roofing, lawn and yard work, oriental rug cleaning, landscaping, handymen, carpet cleaning, auto detailing, electrical, moving, pressure wash, painting, limousine service, window cleaning, remodeling, landscaping, tree service, garage doors, windows, heating and air conditioning, plumbing, pest control, day spa/skin & body care, upholstery cleaning, locksmiths, hauling, dentistry, chimney sweep, auto alarms, electrical for classic cars, hair removal, and chimney repair.

169.    His search behavior and usage indicates that he used his Angie's List membership for commercial purposes and further misappropriated Angie's List's data on behalf of Amazon Local.

Jacquelyn Vail

170.    Defendant Jacquelyn Vail was employed by or performed work for Amazon Local as a "Team Lead/Senior Sales Consultant," working on a team with other Amazon Local employees including Defendant Michael Shmunis.

171.    Moreover, within a three-month period in 2014, Defendant Jacquelyn Vail searched for multiple service providers in the following categories: appliance repair – small,

heating and air conditioning, kitchen and bathroom remodeling, plumbing, drain pipe installation, valves, window treatments, accountants/tax consultants, and upholstering.

172.    Although residing in Seattle, Washington, Defendant Jacquelyn Vail used her membership account and Angie's List's website to directly contact service providers in other regions and to solicit those service providers to do business with Amazon Local.

173.    In November 2013, she sent the following message to one service provider through Angie's List's messaging system:

> Hi Kevin, I run the Charlotte region for AmazonLocal and would love to speak with you about putting together a feature on Amazon.com for the holiday season. We are looking to bring the engagement with our online customers to a local level by featuring top tier merchants in various categories.  . . .  I saw your deal on Angie's List and would be interested in putting together a similar deal to feature to our Amazon.com customers. . . .

174.    Defendant Jacquelyn Vail's usage of her Angie's List membership was for commercial, rather than personal, purposes and for misappropriating Angie's List's data on behalf of Amazon Local.

**E.    Through its employees, Amazon Local is unlawfully and unfairly competing with Angie's List in the marketplace, using Angie's List's own proprietary data that Angie's List has spent two decades and hundreds and millions of dollars developing.**

175.    Angie's List spent approximately $87.5 million in each of the last two years for its marketing efforts, which included costs for gathering and administering member reviews in hundreds of service categories in markets all over the country so that members can find valuable reviews for the service of interest.

176.    In addition to this significant monetary investment, Angie's List has spent twenty years developing the technological and physical infrastructure; employee resources, skill and know how; and goodwill and positive reputation among its members and service providers, in order to create this large and valuable resource for its members.

177.    Indeed, one of Angie's List's greatest assets is this proprietary database of reviews, ratings, and service offerings which enables Angie's List and its members to identify the service providers with whom they want to do business.

178.    Because, as Mr. Zappacosta observes (cited in ¶57 above), there was no single resource to give a company such as Amazon Local access to the entire service provider market, Angie's List had to expend this significant development of monetary, technological, and human resources to go professional-to-professional to gather this critical information.

179.    It is this information that has allowed Angie's List to identify which service providers would be allowed to advertise its services on Angie's List's website—the very process that Professor Raff (cited in ¶55 above) acknowledged Amazon Local would need to go through in order to be successful.

180.    The service provider information, therefore, is extremely valuable to Angie's List, and Angie's List takes reasonable steps to safeguard this and all other confidential and proprietary information.

181.    Upon information and belief, Amazon Local and the Amazon Local Employees misappropriated this proprietary content in an effort to illegally enhance the volume and quality of service offerings and information available to Amazon Local's customers, and thereby extracting a financial benefit for Amazon Local in unlawful competition with Angie's List.  The Defendants' actions specifically enabled them to quickly (albeit unlawfully) identify which service providers they would and (equally important) would not want to do business with.

182.    By targeting highly rated service providers on the Angie's List website, Amazon Local—a company relatively new to the marketplace—is unfairly competing with Angie's List by using Angie's List's own confidential and proprietary information to short circuit the learning curve and development process.

183.    Additionally, Amazon Local and the Amazon Local Employees are improperly interfering with Angie's List's goodwill with its members and service providers.

184.    Thus, Amazon Local is also benefitting from Angie's List's nearly $87.5 million annual marketing operation.

## COUNT I: COMPUTER FRAUD AND ABUSE ACT
### (All Defendants)

185.    Paragraphs 1 through 184 are incorporated herein.

186.    The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, prohibits the unauthorized access of computers and/or computer information.  Angie's List brings this action pursuant to 18 U.S.C. § 1030(g), which authorizes a civil action in these circumstances.

187.    Angie's List operates, and stores information on, computers that are used in interstate commerce and/or communication and are "protected computers" within the meaning of the CFAA.

188.    Such computers stored the information that was unlawfully accessed by Defendants.

189.    On information and belief, Defendants knowingly and with intent to defraud Angie's List accessed Angie's List's computers without permission to further their intended fraud and to obtain items of value (namely, the information concerning service providers).

190.    On information and belief, Defendants intentionally accessed Angie's List's computers without authorization and caused damage.

191.    On information and belief, Defendants knowingly trafficked passwords through which Angie's List's computers were accessed without authorization and with intent to defraud.

192.    The value of the information wrongfully obtained and the value of the damages to Angie's List greatly exceeds $5,000.

193.    The unlawful conduct of Defendants caused Angie's List to suffer a loss during a one-year period aggregating at least $5,000 in value, including through the investigation and security assessment costs associated with Defendants' conduct.

194.    On information and belief, Defendants knowingly, and with intent to defraud Angie's List, accessed Angie's List's computers, without authorization and/or by exceeding authorized access to such a computer, and by means of such conduct furthered the intended fraud and obtained one or more things of value.

195.    Through its conduct, Defendants have interfered with the computer systems and resources of Angie's List in a manner that violates the Computer Fraud and Abuse Act.

196.    Having suffered damages and loss by virtue of Defendants' conduct, Angie's List is entitled to compensatory damages and injunctive relief.

## COUNT II: BREACH OF CONTRACT
### (The Amazon Local Employees)

197.    Paragraphs 1 through 196 are incorporated herein.

198.    As a condition of joining Angie's List, the Amazon Local Employees entered into and agreed to be bound by the Membership Agreement applicable to Angie's List members.

199.    Among the terms and restrictions reflected in the Membership Agreement, the Amazon Local Employees specifically agreed that they would (1) "not attempt to gain unauthorized access to the Service," *see* Ex. A, Membership Agreement ¶ 16(k); (2) "not reproduce, duplicate, copy, sell, re-sell or exploit any Content," *id.* ¶ 16(p); *see also id.* ¶ 9 (agreeing not to "access, reproduce, duplicate, copy, sell, re-sell, visit or otherwise exploit for any commercial, educational, or any other non-personal purpose the reviews and ratings and any content"); and (3) "not access any Content for any commercial, educational or other purposes not related to [the subscriber's] personal purchasing decisions," *id.* ¶ 16(q).

200.    The Amazon Local Employees also specifically agreed that Angie's List could seek injunctive relief to remedy any violation of the Membership Agreement's terms.  *Id.* ¶ 27(d).

201.    The Amazon Local Employees further specifically agreed and consented to the exclusive jurisdiction of the state and federal courts located in Marion County, Indiana and that the Membership Agreement would be governed by the laws of the State of Indiana.  *Id.* ¶ 30.

202.    The Membership Agreement is a valid and enforceable agreement between Angie's List and the Amazon Local Employees.

203.    The conduct of the Amazon Local Employees as set forth above, constitutes material breaches of the Membership Agreement, for which they are liable.

204.    Angie's List has sustained damages resulting from the Amazon Local Employees' breaches and Angie's List is entitled to recover such damages, including the liquidated damages specified in the Membership Agreement, compensatory damages, and injunctive relief.

205.    All conditions precedent to the prosecution of these claims have been performed, have been waived, or have otherwise been excused.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT
### (Amazon Local)

206.    Paragraphs 1 through 205 are incorporated herein.

207.    Valid and enforceable contracts exist between Angie's List and the Amazon Local Employees.

208.    On information and belief, Amazon Local knew of these contracts.

209.    Amazon Local, moreover, had a strong financial interest in obtaining information compiled over the years by Angie's List and using that information to further the success of Amazon Local and to enhance the services for its customers.

210.    On information and belief, Amazon Local, through its officers, directors, and/or employees, intentionally induced the Amazon Local Employees to breach their contracts with Angie's List.  In doing so, Amazon Local acted without any legal justification.

211.    Angie's List has sustained damages resulting from Amazon Local's actions and is entitled to recover such damages, including compensatory damages and injunctive relief.

### COUNT IV: MISAPPROPRIATION OF TRADE SECRETS
### (All Defendants)

212.    Paragraphs 1 through 211 are incorporated herein.

213.    The confidential and proprietary provider profiles, member reviews, and other information developed and maintained by Angie's List derives independent economic value from being in a form that is not readily ascertainable by proper means by other persons who could obtain economic value from the information's disclosure or use.

214.    These profiles and information constitute protected content under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1, *et seq.*

215.    Angie's List has taken reasonable steps to protect its confidential and proprietary information, including but not limited to: restricting access to its members, obtaining the agreement and commitment of its members that they will only use the information as permitted by the Membership Agreement, and by obtaining the agreement and commitment of its members that Angie's List has all rights to prohibit the subsequent copy and display of content on Angie's List's website.

216.    On information and belief, Amazon Local and the Amazon Local Employees intentionally and willfully misappropriated Angie's List's proprietary information and website content.

217.   On information and belief, there is a genuine imminent threat that Amazon Local and the Amazon Local Employees has used and will inevitably continue to use, disclose, or communicate Angie's List's proprietary website content.

218.   On information and belief, Amazon Local's use and disclosure of Angie's List's proprietary website content is unauthorized, unlawful, and in breach of the statutory protections for the information and, with respect to the Amazon Local Employees, contractual duties to Angie's List.

219.   On information and belief, Amazon Local's use of Angie's List's proprietary website content has caused and will continue to cause damage to Angie's List.

220.   If not stopped, Defendants likely will continue using Angie's List's proprietary website content for Amazon Local's own commercial benefit.

221.   Defendants' conduct is irreparably harming Angie's List.

222.   Angie's List is entitled to actual and exemplary damages for the harm caused by Amazon Local's use and/or disclosure of Angie's List's proprietary website content, including disgorgement of Amazon Local's profits, as well as profits lost as a result of Amazon Local's misconduct.

223.   Further, Angie's List is entitled to injunctive relief to protect against the imminent threat of Defendants' future use and/or disclosure of Angie's List's proprietary website content as such use and/or disclosure will cause Angie's List substantial and irreparable harm for which there is no adequate remedy at law.

224.   As a result of Defendants' willful misappropriation, Angie's List is entitled to award of attorneys' fees.

## COUNT V: CONVERSION
### (All Defendants)

225.    Paragraphs 1 through 224 are incorporated herein.

226.    By accessing content for commercial purposes other than for personal purchasing decisions, and by exploiting content for Amazon Local's benefit, the Defendants, on information and belief, knowingly and intentionally exerted unauthorized control over property belonging to Angie's List.

227.    Defendants unlawfully accessed information belonging to Angie's List and, upon information and belief, copied it for their own subsequent, commercial use.  In doing so, the Defendants knew they were accessing and retrieving the information without Angie's List's permission.

228.    The Defendants' conduct constituted conversion pursuant to Indiana Code § 35-43-4-3, and Angie's List has suffered a pecuniary loss as a result of such conduct.

229.    Pursuant to Indiana Code § 34-24-3-1, Angie's List is entitled to recover three times its actual damages, the costs of this action, reasonable attorneys' fees, the cost of paying employees to assist in pursuing this action, and all other reasonable costs of collection.

## COUNT VI: THEFT
### (All Defendants)

230.    Paragraphs 1 through 229 are incorporated herein.

231.    When the Defendants, upon information and belief, copied and transferred Angie's List's proprietary website content to their own computers and information system, and asserted unauthorized control over Angie's List's proprietary website information, the Defendants did so with the intent to deprive Angie's List of the information's value, thereby committing theft as set forth in Indiana Code § 35-43-4-2.

232.    Pursuant to Indiana Code § 34-24-3-1, Angie's List is entitled to recover treble damages, including lost profits resulting from the Defendants' misconduct, costs and attorneys' fees.

## COUNT VII:  UNFAIR COMPETITION
### (Amazon Local)

233.    Paragraphs 1 through 232 are incorporated herein.

234.    The natural and probable consequence of Amazon Local copying Angie's List's proprietary website content and then using the information for Amazon Local's own website as Amazon Local's own is to deceive the public so as to pass off Angie's List's service as Amazon Local's own.

235.    Amazon Local's conduct in passing off Angie's List's information as Amazon Local's own has unfairly interfered with the goodwill between Angie's List and its members and service providers.

236.    Angie's List has sustained damages resulting from Amazon Local's conduct and is entitled to recover such damages, including the liquidated damages specified in the Membership Agreement and compensatory damages, as well as injunctive relief.

237.    Angie's List is entitled to actual and exemplary damages for the harm caused by Amazon Local's conduct.

## COUNT VIII:  COMPUTER TRESSPASS
### (All Defendants)

238.    Paragraphs 1 through 237 are incorporated herein.

239.    Angie's List maintains a "computer network" as defined in Indiana Code § 35-43-2-3(a).

240.    Defendants were not authorized to access Angie's List's computer network to obtain information and contact service providers for commercial use and misappropriate Angie's List's data.

241.    Additionally, Defendants were not authorized to share login information to access Angie's List's computer network with non-Angie's List members.

242.    By knowingly and intentionally accessing Angie's List's computer network to obtain information and contact service providers for commercial use, misappropriate Angie's List's data, and share login information and access with non-Angie's List members, Defendants committed computer trespass as set forth in Indiana Code § 35-43-2-3.

243.    Pursuant to Indiana Code § 34-24-3-1, Angie's List is entitled to recover treble damages, costs and attorney fees.

### COUNT IX:  VIOLATION OF THE STORED COMMUNICATIONS ACT
**(Amazon Local, Michael Albo, Kristin Baker, Kristen Haught, Samantha McDonald, Sharon Porter, and Jacquelyn Vail)**

244.    Paragraphs 1 through 243 are incorporated herein.

245.    The Stored Communications Act (the "SCA"), 18 U.S.C. §§ 2701–2712 was passed by Congress to protect privacy interest in personal and proprietary information.

246.    The SCA prohibits anyone from "intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ."  18 U.S.C. § 2701(a).

247.    Angie's List, though its website, maintains a facility through which electronic communication service is provided, as it provides the ability of its users to send or receive electronic communications.  *See* 18 U.S.C. §§ 2711, 2510(15).

248.    Access to an Angie's List membership account requires a username and password entered through an online portal.

249.    Angie's List servers providing for this electronic communication are "electronic storage" facilities as defined by the SCA because the servers provide a means for the storage of electronic communications incidental to the transmission of user's electronic communications, including electronic communications kept for, and provided to, authorized Angie's List users. *See* 18 U.S.C. §§ 2711, 2510(17)(A).

250.    When certain Defendants, including at least, Amazon Local, Michael Albo, Kristin Baker, Kristen Haught, Samantha McDonald, Sharon Porter, and Jacquelyn Vail, accessed Angie's List's servers to use the messaging system, they obtained electronic communications stored on such systems.

251.    These defendants violated the SCA by repeatedly, intentionally, and without authorization or in excess of the authorization given, accessing Angie's List's servers and to use the messaging system to contact service providers for commercial purposes.

252.    Additionally, these defendants violated the SCA by its agents who were non-Angie's List members and without authorization to access Angie's List's servers to use the messaging system to contact service providers for commercial purposes.

### COUNT X:  CIVIL CONSPIRACY AND CONCERT OF ACTION
### (All Defendants)

253.    Paragraphs 1 through 252 are incorporated herein.

254.    Defendants conspired individually, collectively and in concert of action to accomplish unlawful purposes, including but not limited to the acts, omissions, and torts described in this Verified Complaint, and to accomplish lawful purposes by unlawful means, including but not limited to the acts, omissions, and torts described in this Verified Complaint.

255. The foregoing had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

256. As a direct, proximate, foreseeable and consequential result of Defendants' civil conspiracy, Angie's List has suffered and continues to suffer irreparable harm and is entitled to injunctive relief.

257. To the extent calculable, Angie's List has suffered substantial damages entitling it to actual and exemplary damages for the harm caused by Defendants' conduct.

## COUNT XI: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### (All Defendants)

258. Paragraphs 1 through 257 are incorporated herein.

259. As demonstrated above, Defendants have stolen Angie's List's confidential and proprietary website content in violation of state and federal law.

260. On information and belief, there is a genuine imminent threat that the Defendants have used and will inevitably continue to use, disclose, or communicate Angie's List's confidential and proprietary information.  Indeed, at least one defendant has recently obtained a new Angie's List membership account even though his prior accounts were terminated as a result of his conduct described above.

261. On information and belief, the Defendants' use or inevitable disclosure of Angie's List's secrets is unauthorized, unlawful, and in breach of their statutory and contractual duties to Angie's List.

262. On information and belief, Defendant's theft and use of this information has caused and will continue to cause damage to Angie's List.

263.     Further, Angie's List is entitled to injunctive relief to protect against the imminent threat of Defendants' future use and/or disclosure of Angie's List's confidential and proprietary information as such use and/or disclosure will cause Angie's List substantial and irreparable harm for which there is no adequate remedy at law.

**WHEREFORE,** Angie's List respectfully requests relief in this action that the Court:

A.      Enter a Preliminary Injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with Defendants, their officers, agents, servants, employees, or attorneys, from accessing Angie's List and from disclosing, using, distributing, commercializing, or benefitting from, in any way, the information they have accessed or obtained from or through Angie's List.[4]

B.      Enter a Permanent Injunction requiring Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with Defendants, their officers, agents, servants, employees, or attorneys to continue complying with the terms of the preliminary injunction and any additional terms that the Court deems appropriate upon the conclusion of this case;

C.      Enter an Order requiring Defendants, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with Defendants, their officers, agents, servants, employees, or attorneys to return any and all copies of Angie's List's files and information they have accessed;

D.      Award Angie's List compensatory damages;

E.      Award Angie's List damages for unjust enrichment;

---

[4]      Angie's List does not intend for this injunctive relief to preclude the Defendants' officers, agents, servants, employees (except the named Defendants themselves), and attorneys, and any other persons who are in active concert or participation with Defendants from accessing Angie's List for their own personal purchasing decisions and/or from using or benefitting from information accessed or obtained from or through Angie's List for their own personal purchasing purposes.

F.      Award Angie's List liquidated damages;

G.      Award Angie's List treble damages;

H.      Award Angie's List punitive damages;

I.      Award Angie's List its costs incurred in this action (including attorneys' fees); and

J.      Award Angie's List any further relief that this Court deems just and proper.

## VERIFICATION

I, Brian Quick, Senior Director, Infrastructure and Security, at Angie's List, do hereby affirm, under the penalties for perjury, that the facts alleged in the foregoing Verified Complaint for Injunctive and Other Relief are based upon the business records of Angie's List and are true to the best of my knowledge, information, and belief.


6/19/2015
_____
DATE

DocuSigned by:

*Brian Quick*
_____
A674FB7344A5428...
Brian Quick
Senior Director, Infrastructure and Security Angie's List, Inc.

Respectfully submitted,

ICE MILLER LLP


s/ George A. Gasper
Michael A. Wukmer, Atty. No. 2223-49
George A. Gasper, Atty. No. 24466-41
Stephen E. Reynolds, Atty. No. 28032-49

*Counsel for Plaintiff, Angie's List, Inc.*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100